# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re:* | : | Chapter 11 |
| | : | Case No. 24-11638 (MFW) |
| BIEDERMANN MOTECH, INC., | : | |
| | : | Hearing Date: November 5, 2024 at 10:30 a.m. ET |
| Debtor. | : | Obj. Deadline: October 23, 2024 at 4:00 p.m. ET |

**MOTION OF THE DEBTOR FOR AN ORDER (A) APPROVING DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION, (B) APPROVING CONTENTS OF PLAN SOLICITATION PACKAGE, (C) APPROVING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PROPOSED PLAN OF REORGANIZATION, AND (D) GRANTING CERTAIN RELATED RELIEF**

Biedermann Motech, Inc., debtor and debtor in possession (the "<u>Debtor</u>"), respectfully submits this *Motion for an Order (A) Approving Disclosure Statement as Containing Adequate Information, (B) Approving Contents of Plan Solicitation Packages, (C) Approving Procedures for the Solicitation and Tabulation of Votes to Accept or Reject Proposed Plan of Reorganization, and (D) Granting Certain Related Relief* (the "<u>Motion</u>"). The Debtor seeks entry of an order:

(i) approving the proposed disclosure statement related to its proposed plan of liquidation as containing "adequate information" (as that term is defined in 11 U.S.C. § 1125);

(ii) approving the contents of the proposed Plan Solicitation Packages (defined below) to be distributed to creditors and other parties-in-interest in connection with the solicitation of votes on, and confirmation of, the Debtor's Plan of Liquidation (as it may be amended, the "<u>Plan</u>"), including the forms of ballots for submitting votes on the Plan;

(iii) approving procedures for the distribution of Solicitation Packages and the solicitation and tabulation of votes to accept or reject the Plan, including (a) establishing procedures for the mailing of Solicitation Packages to creditors entitled to vote on the Plan, (b) the proposed record date for determining which entities are entitled to vote on the Plan, (c) the deadline for the submission of ballots with respect to voting on the Plan, and (d) certain vote solicitation and tabulation rules and procedures (including temporary allowance of certain claims for voting purposes); and

(iv) granting certain related relief, including approval of the form and manner of notice of the hearing on confirmation of the Plan.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this chapter 11 case under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue of the Debtor's chapter 11 case and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On July 31, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned chapter 11 case. The Debtor continues to possess its assets and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in the Debtor's case.

5. No committee has been appointed in Debtor's case.

6. The Debtor, a Delaware corporation, is a manufacturer of orthopedic trauma implants systems, which are marketed and distributed in the United States. The production is outsourced to third party contract manufacturers. The Debtor also markets and distributes certain implant systems for spinal surgery in the United States and

Canada.

7.      The entry to the United States market from a marketing perspective required substantially more time and capital than anticipated.  The Debtor is unable to take advantage of opportunities with the existing $34,000,000 of debt on the balance sheet.  The Debtor's restructuring will eliminate most of the debt, provide an infusion of capital and allow existing management to refocus on growth opportunities for existing and new products.

8.      In addition to restructuring the capital of the company, the Debtor has taken the following steps to reduce expenses and better use the remaining capital it has to successfully emerge from the bankruptcy process:

- By eliminating debt which could not be serviced, the interest savings will help financial statements moving forward by accurately reflecting operations.
- The merger of two companies (Biedennann Motech Inc. and Miami Device Solutions, LLC) allows a greater focus on the company's identity and increases efficiencies.
- Reduction on rental space and overhead costs will allow the Debtor to operate with its existing capital over a longer time frame to implement its growth strategy.
- Reduction of payroll which provided major savings (300K per year)
- Placed any major marketing expenditures on hold while reorganizing operations around the new focus on sales of less product groups but more profitable product groups.
- Reorganize terms with keyvendors (Royalties, Implant Suppliers, Cleaning Company, Rental Agreement, IT provider, etc.)

The Debtor believes that the changes in capital structure, cost savings and product focus will allow the company to move forward profitably.

9.      On July 31, 2024, the Debtor filed the Disclosure Statement (as it may be amended, the "<u>Disclosure Statement</u>") [D.I 2] and the accompanying proposed Plan [D.I. 3].

## GROUNDS/BASIS FOR RELIEF

### Adequacy of Information Contained in Disclosure Statement

10. Pursuant to section 1125 of the Bankruptcy Code, prior to soliciting votes on the Plan, the Debtor must provide holders of impaired claims with "adequate information" regarding the proposed Plan in the form of a court-approved disclosure statement.

11. Section 1125(a)(1) of the Bankruptcy Code provides:

> [A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1). Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by impaired creditors entitled to vote on the plan. *See In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989). The bottom-line requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

12. In examining the adequacy of the information contained in a disclosure statement, the bankruptcy court has broad discretion. *See Texas Extrusion Corp. v. Lockheed Corp. (In re*

*Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *In re Oxford Homes*, 204 B.R. 264 (Bankr. D. Me. 1997). Congress granted bankruptcy courts discretion in order to facilitate effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. *See* H.R. Rep.No. 595, 95th Cong., 1st Sess. 408-09 (1977); *see also In re Copy Crafters Quickprint Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties"). Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

13. Courts generally examine whether the disclosure statement contains the following types of information, where applicable:

> (a) the circumstances that gave rise to the filing of the bankruptcy petition;
>
> (b) an explanation of the available assets and their value;
>
> (c) the anticipated future of the debtor;
>
> (d) the source of the information provided in the disclosure statement;
>
> (e) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;
>
> (f) the condition and performance of the debtor while in chapter 11;
>
> (g) information regarding claims against the estate;
>
> (h) a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

      (i) the accounting and valuation methods used to produce the financial information in the disclosure statement;

      (j) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

      (k) a summary of the plan of reorganization or liquidation;

      (l) an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

      (m) the collectibility of any accounts receivable;

      (n) any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

      (o) information relevant to the risks being taken by the creditors and equity interest holders;

      (p) the actual or projected value that can be obtained from avoidable transfers;

      (q) the existence, likelihood and possible success of nonbankruptcy litigation;

      (r) the tax consequences of the plan; and

      (s) the relationship of the debtor with its affiliates.

*See, e.g., In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *see also Oxford*, 104 B.R. at 269 (using similar list). These factors are not meant to be exclusive nor must a debtor provide all the information on the list; rather, the court must decide what is appropriate in each case. *See Ferretti,* 128 B.R. at 18-19 (adopting similar list); *see also Phoenix Petroleum*, 278 B.R. at 393 (making use of similar list but cautioning that "no one list of categories will apply in every case").

14. In addition to the types of information courts typically require, a disclosure statement generally provides an overview of the chapter 11 process for those creditors who may be unfamiliar with chapter 11. A disclosure statement also normally provides an analysis of the alternatives to a proposed plan.

15. The Debtor submits that the Disclosure Statement contains information with respect to the applicable subject matter identified above, including, but not limited to:

    (a) an overview of the Plan;

    (b) an explanation of the available assets and their value;

    (c) the operation of the Debtor's businesses;

    (d) the indebtedness of the Debtor and information regarding pending claims;

    (e) a disclaimer that indicates that no statements or information concerning the debtors or their assets or securities are authorized, other than those set forth in the Disclosure Statement;

    (f) the key events leading to the commencement of the Debtor's chapter 11 case;

    (g) the significant events that occurred during the chapter 11 case;

    (h) an overview of a liquidation under Chapter 7;

    (i) the risk factors affecting the Debtor;

    (j) the procedures for confirming the Plan; and

    (k) the tax consequences of the Plan.

16. In addition to the types of information that bankruptcy courts typically examine, the Disclosure Statement provides an analysis of the alternatives to the confirmation and consummation of the Plan and concludes with a statement by the Debtor that it believes the Plan enables creditors and equity holders to realize the most value under the circumstances.

17.     The Disclosure Statement contains the information bankruptcy courts typically consider when determining whether the information in a disclosure statement is adequate. Accordingly, the Debtor respectfully requests that this Court approve the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code.

## Contents of the Solicitation Packages

### *The Solicitation Package*

18.     Rule 3017(d) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") identifies the materials that must be provided to holders of claims and equity interests for purposes of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan:

> Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1) the plan or a court-approved summary of the plan;
>
> (2) the disclosure statement approved by the court;
>
> (3) notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (4) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

19.     After the Court has approved the Disclosure Statement, the Debtor will send holders

of claims entitled to vote on the Plan solicitation packages consisting of the materials required to be provided pursuant to Rule 3017(d) (the "Solicitation Package[s]"). Specifically, and except as set forth herein, the Solicitation Packages will contain copies of:

a. the notice of the hearing on confirmation of the Plan and the deadline to submit ballots to accept or reject the Plan (the "Confirmation Hearing Notice"), substantially in the form attached hereto as Exhibit A;

b. the order approving the Disclosure Statement and the Disclosure Statement (together with any accompanying exhibits, including the Plan, that have been filed with the Court before the date of the mailing); and

c. an appropriate form of ballot and such other materials as the Court may direct.[2]

20. With respect to holders of claims and interests who are not entitled to vote to accept or reject the Plan, the Debtor proposes (i) sending such parties paper copies of the Confirmation Hearing Notice and a "Notice of Non-Voting Status" (in substantially the forms attached hereto as Exhibits A–B, respectively) and (ii) making available to such parties any other materials contained in the Solicitation Packages in paper copy upon written request to Debtor's counsel: Jack D. McLaughlin, Jr., Esquire/Albert A. Ciardi III, Esquire, Ciardi Ciardi and Astin, 1204 N. King Street, Wilmington, Delaware 19801.

21. For entities listed in the Schedules for notice purposes, for entities whose claims are listed in the amount of $0, or whose claims are scheduled as contingent, unliquidated, or disputed and who did not file a proof of claim (other than parties to executory contracts or unexpired leases to be rejected pursuant to the Plan), the Debtor proposes that in lieu of the Solicitation Package, such parties only receive the Confirmation Hearing Notice.

---

[2] Although the Debtor is not soliciting votes from interest holders, the packages mailed to such parties are also referred to in this Motion as "Solicitation Packages."

22. There are cost savings associated with providing parties not entitled to vote on the Plan only the Confirmation Hearing Notice and the Notice of Non-Voting Status in paper form and, therefore, the proposed procedure is appropriate.

### *Approval of Form of Ballots*

23. Rule 3017(d) of the Bankruptcy Rules requires that debtors mail a ballot form that substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan." The Debtor proposes to distribute to creditors entitled to vote on the Plan a ballot in substantially the form attached hereto as Exhibit C (the "Ballot"). The Ballot is based on Official Form No. 14, but has been modified to address the particular terms of the Plan. The Debtor proposes that the appropriate form of Ballot be distributed to holders of claims in the following class entitled to vote to accept or reject the Plan:

Ballot No. 1 -- Ballot for General Unsecured Claims (Class 3)

### *Notices of Non-Voting Status*

24. No Ballots have been proposed for interest holders in Class 2 because solicitation of acceptances from equity interest holders in Class 2 is not required. The claims and/or interests of holders in Class 2 are either (i) not impaired under the Plan and are deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code or, alternatively, (ii) impaired under the Plan and deemed to reject the Plan under section 1126(g) of the Bankruptcy Code. As noted above, the Solicitation Package for holders of interests in Class 2 will include a Notice of Non-Voting Status (see Exhibit B) and the Confirmation Hearing Notice (see Exhibit A).

25. Similarly, holders of claims that are unclassified pursuant to section 1123(a)(1) of

12

the Bankruptcy Code will receive a Notice of Non-Voting Status (see Exhibit B) and the Confirmation Hearing Notice (see Exhibit A).

**Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan**

26. The Debtor requests approval of the solicitation and ballot tabulation procedures (collectively, the "Solicitation and Tabulation Procedures") that are described below. The Solicitation and Tabulation Procedures set forth below detail (a) the procedures for the distribution of Solicitation Packages to the Debtor's creditors and other parties in interest, and (b) certain procedures and rules regarding the tabulation of votes to accept or reject the Plan. The Debtor submits that the Solicitation and Tabulation Procedures are appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

*Mailing of the Solicitation Packages*

27. The Solicitation Packages will be mailed, except as provided below, not less than twenty-eight (28) days prior to the hearing on confirmation of the Plan to: (a) all persons or entities that have filed proofs of claim on or before the Record Date (as defined below) (or their transferees) in accordance with the procedures set forth below; (b) all persons or entities listed in the Schedules as holding liquidated, noncontingent, and undisputed claims as of the Record Date (or their transferees) in accordance with the procedures set forth below; (c) all other known holders of claims or potential claims against the Debtor, if any, as of the Record Date (including parties on the Debtor's Schedule G, if any); (d) all holders of record of equity interests in the Debtor; (e) all other parties in interest that have filed requests for notice pursuant to Rule 2002 of the Bankruptcy Rules in the Debtor's chapter 11 case; (f) the U.S. Securities & Exchange Commission; and (g) the U.S. Trustee.

28. The above list of proposed recipients of the Solicitation Packages is substantially the same list of parties to whom the Debtor sent the Disclosure Statement Notice. Some of the Disclosure Statement Notices may be returned as undeliverable. To the extent that a Disclosure Statement Notice is returned as undeliverable as a result of incomplete or inaccurate addresses (the "Undeliverable Addresses"), the Debtor believes that it would be costly and wasteful to mail Solicitation Packages again to the Undeliverable Addresses. Therefore, the Debtor requests to be excused from mailing Solicitation Packages to those entities for which the Debtor have only Undeliverable Addresses unless the Debtor is provided with accurate addresses for such entities, in writing, on or before the Record Date. If a Solicitation Package nonetheless is returned as undeliverable, Debtor's counsel shall resend such Solicitation Package only once, provided that the United States Post Office has included a forwarding address at least ten (10) business days before the Voting Deadline.

### *The Record Date*

29. Rule 3017(d) of the Bankruptcy Rules provides that the "date [an] order approving the disclosure statement is entered," or such other date established by the court, is the record date for determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to receive the materials specified in Rule 3017(d), including ballots for voting on a plan of liquidation. Accordingly, the Debtor proposes that the Court establish November 5, 2024, the anticipated date of the Disclosure Statement Hearing, as the record date for determining which creditors are entitled to receive Solicitation Packages and vote on the Plan (the "Record Date").

30. With respect to a transferred claim, the Debtor further proposes that the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such transferred claim only if by the Record Date (a) all actions necessary to effect the transfer of the claim pursuant to Rule 3001(e) of the Bankruptcy Rules have been completed, or (b) the transferee files (i) the documentation required by Rule 3001(e) to evidence the transfer, and (ii) a sworn statement of the transferor supporting the validity of the transfer.

***Voting Deadline for Receipt of Ballots***

31. Rule 3017(c) of the Bankruptcy Rules provides that, on or before approval of a disclosure statement, the Court may fix a time within which the holders of claims or equity interests may accept or reject a plan. The Debtor anticipates commencing the Plan solicitation process by mailing Ballots and other solicitation materials within five (5) business days after the entry of an order approving the Disclosure Statement. Based on this schedule, the Debtor proposes that all Ballots must be properly executed, completed, and delivered to Debtor's counsel (John D. McLaughlin, Jr., Esquire, Ciardi Ciardi & Astin, 1204 N. King Street, Wilmington, Delaware 19801 either by (a) regular mail, (b) overnight mail, or (c) personal delivery to the appropriate address identified on the Ballots, so that in each case such Ballots are <u>received</u> by Debtor's counsel no later than 5:00 p.m. (Eastern Time) on such date established by the Debtor (the "<u>Voting</u> Deadline").

32. The Debtor submits that, under the circumstances of this case, the proposed solicitation period provides sufficient time for creditors to make informed decisions to accept or reject the Plan and submit timely Ballots.

***Procedures for Vote Tabulation***

33. Section 1126(c) of the Bankruptcy Code provides:

15

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

Further, Rule 3018(a) of the Bankruptcy Rules provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

34. Solely for purposes of voting to accept or reject the Plan—and not for the purpose of the allowance of, or distribution on account of, a claim and without prejudice to the rights of the Debtor in any other context—the Debtor proposes that each claim within a class of claims entitled to vote to accept or reject the Plan be temporarily allowed in accordance with the following rules (together with additional rules specified below, the "<u>Tabulation Rules</u>"):

- unless otherwise provided in the Tabulation Rules, a claim will be temporarily allowed for voting purposes in the amount of such claim as set forth in a timely-filed proof of claim;

- if a claim is deemed allowed in accordance with the Plan, such claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan;

- if a claim for which a proof of claim has been timely filed is scheduled as contingent, unliquidated or disputed, or if such proof of claim has not been filed but such claim relates to an unexpired lease or executory contract to be rejected pursuant to the Plan, such claim will be temporarily allowed for voting purposes in the amount of $1.00;

- if a claim is listed in the Debtor's Schedules as contingent, unliquidated, or disputed and a proof of claim was not timely filed, such claim will be disallowed for voting purposes;

- if a claim holder identifies a claim amount on its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot;

- if a claim otherwise has been estimated or allowed by the Court, such claim will be allowed for voting purposes in the amount so estimated or allowed by the Court;

- if the Debtor seeks to reduce a claim in an objection filed before the Voting Deadline, such claim will be temporarily allowed for voting purposes in the amount to which the Debtor

16

seeks to reduce such claim, pending allowance of the claim in a higher amount by the Court; and

- if the Debtor has filed and served an objection as to the amount, classification or allowance of a Claim at least five (5) days before the Ballot Deadline, such Claim will be temporarily allowed, disallowed or reclassified for voting purposes as if the relief requested in the objection were granted.

35. Any claimant that seeks to challenge the allowance of its claim for voting purposes in accordance with the Tabulation Rules shall file a motion pursuant to Rule 3018 of the Bankruptcy Rules ("Rule 3018 Motion") and serve such motion on the Debtor's undersigned counsel so that it is received on or before the date that is fifteen (15) days prior to the Voting Deadline. To the extent necessary, any Rule 3018 Motion shall be heard at the hearing on confirmation of the Plan; however, such motion may be resolved by agreement between the claimant and the Debtor if it is filed with the Bankruptcy Court prior to the Voting Deadline. In accordance with Rule 3018 of the Bankruptcy Rules, any Ballot submitted by a creditor that files a Rule 3018 Motion shall be counted solely in accordance with the Tabulation Rules unless and until (a) the underlying claim is temporarily allowed by the Court for voting purposes in a different amount or (b) the Debtor agrees to allow the claim in a different amount for voting purposes only.

36. In tabulating the Ballots, the Debtor requests that the following additional Tabulation Rules be utilized: (a) any Ballot that is properly completed, executed, and timely returned to Debtor's counsel but does not indicate an acceptance or rejection of the Plan will not be counted as either a vote to accept or a vote to reject the Plan; (b) if a creditor casts more than one Ballot for the same claim before the Voting Deadline, the last dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus will supersede any prior Ballots; (c) creditors will be required to vote all of their claims within a particular class under the Plan either to accept or reject the Plan and may not split their votes; thus, a Ballot (or a group of

17

Ballots within a Plan class received from a single creditor) that partially rejects and partially accepts the Plan will not be counted; and (d) Ballots received after the Voting Deadline will not be tabulated for determining whether a class of creditors has voted to accept or reject the Plan; provided that the Debtor, in its discretion, may agree to extend the Voting Deadline for one or more creditors.

37. The Debtor also requests that, unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptances, and revocations or withdrawal of ballots will be determined by the Debtor, whose determination will be final and binding. By this Motion, the Debtor seeks to reserve the absolute right to: (a) contest the validity of any revocation or withdrawal of any vote on the Plan, (b) reject any and all ballots not in proper form, and (c) waive any defects or irregularities or conditions of delivery as to any particular ballot. By this Motion, the Debtor also requests that the interpretation of the applicable requirements (including those with respect to the ballot and the instructions thereto) by the Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. The Debtor further requests that, unless waived, any defects or irregularities in connection with the deliveries of ballots must be cured within such time as the Debtor (or the Bankruptcy Court) determines. Further, the Debtor requests that neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of ballots, nor will any of them incur any liabilities for failure to provide such notification. Finally, the Debtor requests that, unless otherwise directed by the Bankruptcy Court, delivery of such ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalid.

**Confirmation Hearing and Notice**

*The Confirmation Hearing*

38. Rule 3017(c) of the Bankruptcy Rules provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

39. In accordance with Rule 3017(c) of the Bankruptcy Rules and consistent with the proposed solicitation schedule, the Debtor requests that the Court schedule the hearing on confirmation of the Plan (the "Confirmation Hearing") as soon as practicable and that the Confirmation Hearing be continued from time to time by the Court without further notice. The Debtor further proposes that objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection to the confirmation of the Plan; and (d) be filed with the Court and served on (i) the Debtor's undersigned counsel and the U.S. Trustee so that they are received no later than 4:00 p.m. (Eastern Time) on such date established by the Debtor (the "Confirmation Objection Deadline").

40. Rule 2002(b) of the Bankruptcy Rules requires at least twenty-eight (28) days' notice by mail to all creditors and indenture trustees of the time set for filing objections to confirmation of a chapter 11 plan and the hearing to consider confirmation of a chapter 11 plan. Rule 2002(d) of the Bankruptcy Rules requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court. In accordance with Rules 2002 and 3017(d) of the Bankruptcy Rules, the Debtor proposes serving the Confirmation Hearing Notice on all creditors, equity security holders, and other parties in interest, as part of the Solicitation Packages and not less than 28 days prior to the Confirmation Objection Deadline. The

Confirmation Hearing Notice will set forth: (a) the Voting Deadline for the submission of Ballots to accept or reject the Plan; (b) the Confirmation Objection Deadline; and (c) the time, date, and place of the Confirmation Hearing.

41. The Debtor submits that the foregoing procedures for providing notice of the Confirmation Hearing, the Confirmation Objection Deadline, and related matters fully comply

with Rules 2002 and 3017 of the Bankruptcy Rules. Accordingly, the Debtor requests that the Court approve such procedures as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

### Request for Authority to File Consolidated Response to Any Objections

42.     The Debtor submits that the issues raised in any objections and any proposed resolutions to those issues can more efficiently and effectively be considered by the Court if the Debtor files a consolidated response to the objections, setting forth responses to the issues raised and, if appropriate, proposed modifications to the Plan to address those issues. Accordingly, the Debtor requests authority to file, if it determines it to be necessary, a consolidated response to any objections to the Plan.

### Notice

43.     Notice of this Motion will be given to: (i) the Office of the United States Trustee; (ii) the Debtor's unsecured creditors; (iii) the Debtor's equity security holders of record; and (iv) parties requesting notice under Rule 2002 of the Bankruptcy Rules. In light of the nature of the relief requested, no other or further notice is required.

### No Prior Request

44.     No prior motion for the relief requested has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form submitted herewith, granting the relief requested and such other and further relief as the Court deems just and proper.

Dated: October 8, 2024  
       Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ John D. McLaughlin, Jr.*
John D. McLaughlin, Jr. (No. 4123)
1204 N. King Street
Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
jmclaughlin@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
Philadelphia, PA 19103
(215) 557-3550 telephone
(215) 557-3551 facsimile
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

*Attorneys for Debtor and*
 *Debtor in Possession*